**BURSOR & FISHER, P.A.**
Neal J. Deckant (State Bar No. 322946)
Ines Diaz Villafana (State Bar No. 354099)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
idiaz@bursor.com
kvalenzuela@bursor.com

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOANNA BAYER and JOSHUA MOKELU, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GARZA FOOD VENTURES, LLC d/b/a SIETE FAMILY FOODS<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiffs Joanna Bayer and Joshua Mokelu ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Garza Food Ventures LLC d/b/a Siete Family Foods ("Siete" or "Defendant"), based on Siete's false and deceptive advertising and labeling of its avocado oil chip products. Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations pertaining to themselves, which are based upon personal knowledge.

**NATURE OF THE ACTION**

1. This is a class action lawsuit concerning Defendant's false and misleading labeling and marketing on its Kettle Cooked Sea Salt Potato Chips (the "Potato Product") and its Maíz Sea Salt Corn Tortilla Chips (the "Corn Product") (collectively, the "Products") manufactured, sold, and produced by Defendant, which prominently and unequivocally represent they are "Made with Avocado Oil" (the "Avocado Oil Representation").

2. The Avocado Oil Representation appears on the front of every package for the Products. The Avocado Oil Representation is reinforced by the ingredient statement on the back label of each of the Products, which states "Avocado Oil" as the only oil in the Products and declares no other oil.

3. Based on the Avocado Oil Representation, reasonable consumers are misled to believe that the oil used to make the Products is avocado oil, and that the Products are not made with other, cheaper oils. However, unbeknownst to consumers, the Products are not made with avocado oil.

4. Peer-reviewed scientific testing conducted by food scientists at the University of California, Davis ("UC Davis")—published in July 2026 in the journal *Applied Food Research*—extracted the oil from the Products and analyzed their fatty acid and sterol composition against the internationally recognized compositional standards for authentic avocado oil codified in the *Codex Alimentarius*. The UC Davis researchers tested two separate production lots of each Product, and analyzed each lot in duplicate. Every sample of every Product was classified as compositionally **inconsistent** with authentic avocado oil. Instead, the oil recovered from the Products bore the compositional signature of cheap, refined vegetable (seed) oils. The consistent absence of avocado

oil and presence of cheap oils in the tested Products reveals a widespread issue in Defendant's manufacturing processes. Because all Products at issue claim to be made with avocado oil, the avocado oil substitution and/or dilution with cheap oils occurred at Defendant's manufacturing facilities, the absence of avocado oil affects all batches and lots of Defendant's Products, including Plaintiffs' purchases.

5. Avocado oil is a premium ingredient, and consumers pay a premium for products made with it. Plaintiffs and Class members paid that premium for the Products. Had they known the truth—that the Products are not made with avocado oil or that the Products contain other, cheap, refined seed oils—they would not have purchased the Products, or would have paid substantially less for them.

6. Accordingly, Plaintiffs bring claims individually and on behalf of similarly situated purchasers of Defendant's Products for violations of (i) California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq*.; (ii) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (iii) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.; (iv) breach of express warranty; and (v) unjust enrichment.

## PARTIES

7. Plaintiff Joanna Bayer is a citizen of California and resident of Oakley, California. Plaintiff Bayer has purchased both of Defendant's Products regularly on various occasions. Most recently, in January 2026, Plaintiff Bayer purchased Defendant's Maíz Sea Salt Corn Tortilla Chips Product via Thrive Market, while in Oakley, California. Plaintiff Bayer regularly purchased Defendant's Products believing them to be a healthy alternative to snacks made with seed oils. Prior to purchasing Defendant's Corn Product, Plaintiff Bayer saw and reasonably relied on Defendant's affirmative representation that the Corn Product was "Made with Avocado Oil." Plaintiff Bayer intentionally avoids seed oils because of their documented harmful health effects. Plaintiff Bayer reasonably relied on the Avocado Oil Representation prominently made on the Product's front packaging in choosing to purchase the Product. Plaintiff Bayer understood Defendant's representation to mean exactly what Defendant claims: that the Product is made with

avocado oil and that the only oil used is avocado oil. This representation was part of the basis of the bargain in that she would not have purchased the Product or would not have purchased it on the same terms had she known Defendant's representation and warranty regarding its avocado oil content was untrue. In making her purchase, Plaintiff Bayer paid a price premium for the Product. As a direct result of Defendant's misleading, false, unfair, and deceptive practices as alleged herein, Plaintiff Bayer suffered economic injuries.

8. Plaintiff Bayer remains interested in purchasing Defendant's Product in the future. However, Plaintiff Bayer is unable to determine the true composition of the oil in the Products absent scientific testing, and so will be unable to purchase the Products in the future, although she would like to. So long as Defendant markets the Product as containing avocado oil when the Product actually does not contain avocado oil and instead contains undisclosed oils, when presented with false or misleading information when shopping, Plaintiff Bayer will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitors' products. Plaintiff Bayer is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products' oil contents are accurately represented.

9. Plaintiff Joshua Mokelu is a citizen of California and resident of Rancho Cucamonga, California. Plaintiff Mokelu has purchased both of Defendant's Products on various occasions. As recently as April 2026, Plaintiff Mokelu purchased Defendant's Potato Product from a Sprouts store in Rancho Cucamonga, California. Prior to purchasing Defendant's Potato Product, Plaintiff Mokelu saw and reasonably relied on Defendant's affirmative representation that the Product was "Made with Avocado Oil." Defendant prominently makes this representation on various places on the front of the Potato Product. Plaintiff Mokelu further reasonably relied on the Avocado Oil Representations made on the Product's ingredient list, which states "avocado oil" as the only oil in the Potato Product in choosing to purchase the Product. Plaintiff Mokelu understood Defendant's Avocado Oil Representations to mean exactly what Defendant claims: that the Product is made with avocado oil and that the only oil used is avocado oil. This representation was part of the basis of the bargain in that he would not have purchased the Product or would not have

purchased it on the same terms had he known Defendant's representation and warranty regarding its avocado oil content was untrue. In making his purchase, Plaintiff Mokelu paid a price premium for the Product. As a direct result of Defendant's misleading, false, unfair, and deceptive practices as alleged herein, Plaintiff Mokelu suffered economic injuries.

10. Plaintiff Mokelu remains interested in purchasing Defendant's Product in the future. However, Plaintiff Mokelu is unable to determine the true composition of the oil in the Products absent scientific testing, and so will be unable to purchase the Products in the future, although he would like to. So long as Defendant markets the Product as containing avocado oil when the Product actually does not contain avocado oil and instead contains undisclosed oils, when presented with false or misleading information when shopping, Plaintiff Mokelu will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitors' products. Plaintiff Mokelu is further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that the Products' oil contents are accurately represented.

11. Defendant Garza Food Ventures, LLC, doing business as Siete Family Foods ("Siete"), is a Texas limited liability company with its headquarters and principal place of business in Austin, Texas. At all times relevant to this Complaint, Defendant has advertised, marketed, distributed, or sold the Products to consumers throughout the United States and California, including in this District.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed classes are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative classes, and most members of the proposed classes are citizens of states different from Defendant. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with the State of California, and otherwise intentionally avails itself of

the markets of the State of California, through the promotion, marketing, distribution, and sale of the Products in this State, including in this District, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Bayer's claims occurred in this District. Specifically, Plaintiff Bayer purchased the Products in this District within the statute of limitations period.

## FACTUAL ALLEGATIONS

### I. DEFENDANT'S PRODUCTS

15. Defendant markets itself as a family-founded, "better-for-you" Mexican-American food brand whose products are made with purported simple, high-quality ingredients. Defendant's Potato Product is advertised as being made "with just the basics—avocado oil and sea salt." Defendant states publicly that its "tortilla chips, maiz totopos and potato chips are fried in avocado oil."[1]

16. Defendant's Products are positioned to appeal to consumers who seek out premium ingredients and who deliberately avoid the refined vegetable and seed oils used in conventional snack foods. Defendant knows that consumers care about, and rely on, the claims that it makes about the ingredients in its Products—and in particular about the oil used to make them.

17. Defendant is directly involved in the manufacturing, sale, and distribution of the Products, and is responsible for the advertising, marketing, trade dress, and packaging of the Products. Defendant developed, marketed, and sold the Products during the class period. Defendant is also directly responsible for ensuring that its Products' oil content conforms to the advertised claims. Thus, Defendant's failure to ensure at its manufacturing facilities that its Products actually contained avocado oil affects all batches and lots of Defendant's Products.

18. Defendant has labeled, advertised, distributed, and sold the Products throughout the United States, including in California, during the statute of limitations period. The Products are

[1] https://sietefoods.com (last visited Aug. 13, 2026).

sold at national and regional grocery retailers—including, among others, Whole Foods Market, Sprouts Farmers Market, Target, Kroger and its banners, Albertsons/Safeway and its banners, Walmart, and Costco—and directly to consumers through Defendant's own website, sietefoods.com, and through online retailers including Amazon.com.

19. On October 1, 2024, PepsiCo, Inc., announced an agreement to acquire Siete for $1.2 billion. PepsiCo completed the acquisition on January 17, 2025. Siete is now a wholly owned subsidiary of PepsiCo, Inc.[2] The acquisition was a part of PepsiCo's attempt to expand its portfolio to include "positive choices for consumers" through "convenient foods and drinks that are nutritious, enjoyable, and fit consumers' lifestyles."[3]

## II. THE AVOCADO OIL REPRESENTATION IS FALSE AND MISLEADING

20. The Products consist of Defendant's Kettle Cooked Sea Salt Potato Chips and Defendant's Maíz Sea Salt Corn Tortilla Chips.

21. The Avocado Oil Representation—"Made with Avocado Oil"—is prominently displayed on the front label on all Products, as depicted in the following image on next page:

**[INTENTIONALLY BLANK]**

[2] *PepsiCo Completes Acquisition of Siete Foods*, PepsiCo Newsroom (Jan. 17, 2025), https://www.pepsico.com/en/newsroom/press-releases/2025/pepsico-completes-acquisition-of-siete-foods.

[3] *Id*.




***Figure 1***

22. On the Potato Product, Defendant prominently places the Avocado Oil Representation on multiple places on the front of the packaging. The front label for the Potato Product depicts an avocado, visually reinforcing the representation.

///

///

///

///

///




***Figure 2***

23. The Avocado Oil Representation conveys the unequivocal message that the oil used to make the Products is avocado oil.

24. The oil in the Products is not a trace or incidental ingredient. It is the second-listed ingredient by weight in the Products, and it is the medium in which the Products are purportedly cooked. Defendant states that its potato chips and tortilla chips are "fried in avocado oil."

25. The Avocado Oil Representation is reinforced—not qualified—by the back label of each Product. The ingredient statement for the Potato Product reads, in its entirety: "Potatoes, Avocado Oil, Sea Salt."




***Figure 3***

26. The ingredient statement for the Corn Product reads, in relevant part: "Nixtamalized Corn Blend (Organic White Corn, Organic Yellow Corn, Lime), Avocado Oil, Sea Salt" and includes a section to answering "Why Avocado Oil?"




***Figure 4***




***Figure 5***

27. Each Product declares exactly one oil on its packaging—"Avocado Oil." Neither Product declares any other oil, any oil blend, or any "and/or" oil statement. Federal regulations require that each ingredient in a packaged food be declared "by its common or usual name." 21

C.F.R. § 101.4(a)(1). A reasonable consumer who reads "Made with Avocado Oil" on the front of the package, and then finds "Avocado Oil"—and only "Avocado Oil"—on the ingredient statement, reasonably understands that the oil in the Products is avocado oil.

28. Unfortunately for Plaintiffs and similarly situated consumers, Defendant's Products are not made with avocado oil. As set forth in detail below, peer-reviewed scientific testing establishes that the oil from the Products is not compositionally consistent with authentic avocado oil, and instead exhibits the compositional profile of cheaper, refined vegetable oils. The Avocado Oil Representation is therefore false and misleading.

## III. THE AVOCADO OIL REPRESENTATION IS MATERIAL TO CONSUMERS

29. The Avocado Oil Representation is material—*i.e.*, it is important to consumers with respect to their decision to purchase the Products.[4]

30. Avocado oil is well known to be one of the healthiest food oils. For example, studies have indicated that compounds in avocado oil may help protect the liver, lower blood pressure and LDL cholesterol, and reduce osteoarthritis-related joint pain, post-meal blood sugar, and total cholesterol levels.[5] It is also high in monounsaturated fat, which is considered more heart healthy than saturated fat, while being slightly more stable than the polyunsaturated fats typically found in vegetable oils.[6] Avocado oil is also in high demand because it has the highest smoke point of all plant-based food oils, and is thus more desirable for high-heat applications such as frying.[7]

31. Each of these qualities, among others, motivates consumers to pay a premium price for products made with avocado oil as compared to products made with other food oils like canola, corn, peanut, safflower, soybean, and sunflower oil.

---

[4] For instance, a 5.5 oz. bag of Siete Kettle Cooked Sea Salt Potato Chips costs approximately $4.55 to $5.49, or roughly $0.83 to $1.00 per ounce, and a 7.5 oz. bag of Siete Maíz Sea Salt Corn Tortilla Chips costs approximately $4.99 to $6.49, or roughly $0.67 to $0.87 per ounce. By contrast, an 8 oz. bag of Lay's Classic Potato Chips, which are made with vegetable oil, costs approximately $3.99, or $0.50 per ounce.

[5] https://www.healthline.com/nutrition/9-avocado-oil-benefits (last visited Aug. 13, 2026).

[6] https://www.masterclass.com/articles/what-is-avocado-oil-a-guide-to-cooking-with-avocado-oil (last visited Aug. 13, 2026).

[7] *Id.*

32. A substantial and growing number of consumers specifically seek to avoid refined vegetable and seed oils in their diets, and choose products made with avocado oil for that reason. For those consumers, a front-of-package claim that a food is "Made with Avocado Oil" is not merely a preference—it is the reason the product is purchased at all.

33. Regardless of whether consumers believe that avocado oil is superior to other oils or possesses the qualities described above, the question whether the oil in a food product is the oil that the label says it is—rather than a cheaper oil substituted for it—is material to reasonable consumers. Consumers may be allergic to, or have other reasons for not consuming, certain oils. Consumers of the Products reasonably expect to know what type of oil they are consuming.

34. The UC Davis researchers observed the significance of front-of-package oil claims, noting that "consumers may reasonably interpret front-of-package oil claims as signals of meaningful product differentiation," and that because all of the products studied "declared only a single edible oil in the ingredient statement and did not disclose blended oil formulations," "consumers would reasonably expect the named oil, particularly when emphasized through front-of-package claims . . . to be the primary lipid source of the product."[8]

35. Consumers purchased, and continue to purchase, the Products in part because the Avocado Oil Representation conveys the unequivocal message that the Products are made with avocado oil. Plaintiffs and Class members would have paid less for the Products, or would not have purchased them at all, if not for the Avocado Oil Representation. Therefore, Plaintiffs and Class members have suffered a financial injury in the form of paying a price premium that the Products command in the market as a result of Defendant's representation that the Products are made with avocado oil.

---

[8] Natalie Lopez-Alvarez, Xueqi Li, Benjamin Vizgordiski & Selina C. Wang, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods*, 6 Applied Food Research 102389 (2026), https://doi.org/10.1016/j.afres.2026.102389.

## IV. UC DAVIS'S STUDY ESTABLISHES THAT DEFENDANT HAS EITHER DILUTED OR SUBSTITUTED THE AVOCADO OIL IN THE PRODUCTS – THUS ENGAGING IN ECONOMIC ADULTERATION

36. The study, *Authenticity of avocado and olive oils used as ingredients in commercially processed foods* (the "Study"), conducted by researchers at UC Davis, reported the results of the first systematic study of whether avocado oil and olive oil used as ingredients in commercially processed foods are authentic. [9]

37. The UC Davis researchers selected commercially processed foods in three categories—chips, mayonnaise, and salad dressings—based on "consumer popularity and market availability."[10] Critically, the researchers included only products that "declared a single oil (*e.g.*, avocado oil or olive oil) in the ingredient statement and did not list additional edible oils." [11] The Products satisfied that criterion and were included in the Study.

38. The UC Davis researchers analyzed 74 samples, representing 37 distinct commercial products, each of which was collected in two separate production lots. The Products were among the products tested. [12] In the product information accompanying the Study, Defendant's Avocado Oil Kettle Cooked Sea Salt Potato Chips are identified as Sample Nos. 13 and 14 and its Avocado Oil Maíz Sea Salt Corn Tortilla Chips are identified as Sample Nos. 15 and 16.

39. Samples were purchased in 2025 and 2026 from online sources and retail stores in California and stored unopened in the laboratory until analysis. [13] Two separate lots of each Product were collected and analyzed. [14] The Products were therefore subjected to analyses drawn from two independent production lots. [15]

---

[9] *Id.*

[10] *Id.* at 2.

[11] *Id.*

[12] UC Davis, *Studied Products AFRES*, https://ucdavis.app.box.com/s/6ogs4l0ogplunooktwryr5b1m6k2xr9u/file/2347698985551?sb=/details.

[13] Lopez-Alvarez, *et al.*, *supra* note 8 at 2.

[14] *Id.*

[15] *Id.*

40. Researchers measured both the Products' fatty acid profile and sterol profile.[16] They classified samples by comparing the measured fatty acid and sterol profiles against the *Codex Alimentarius* Standard for Named Vegetable Oils (CXS 210-1999) and the Standard for Olive Oils and Olive Pomace Oils (CXS 33-1981), which are "intended to encompass expected natural variability" of fatty acid and sterol compositions in oil.[17]

41. The Study's classification criteria were deliberately conservative and generous to the products tested.[18] To account for analytical uncertainty, biological variability, and potential processing influences, the researchers tolerated minor deviations: a deviation limited to a single fatty acid or sterol marker, and "not exceeding 10% beyond established compositional limits," was not treated as sufficient to classify a sample as inconsistent, and such samples "were therefore considered consistent."[19] A sample was treated as merely "borderline"—and not inconsistent—where no more than two markers marginally exceeded that same 10% allowance without concordant deviations elsewhere. And when a sample was fully consistent in either fatty acids or sterols and borderline in the other, "it was considered consistent with authentic oil."[20] Only samples with "multiple deviations or patterns inconsistent with authentic reference profiles" were classified as inconsistent.[21]

42. **The Products failed both lots tested.** Researchers classified both lot samples as inconsistent with the composition of avocado oil.

43. The Products were not outliers. Of the 28 avocado oil–labeled chip samples the UC Davis researchers tested, 26—**93%**—were classified as inconsistent with authentic avocado oil. Across all avocado oil–labeled products in the Study, "[e]ighty-nine percent of avocado oil–labeled products exhibited compositional patterns inconsistent with authentic avocado oil."[22]

---

[16] *Id.*

[17] *Id.*

[18] *See id.* at 3.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 1, 3.

44. Principal component analysis of the fatty acid and sterol profiles "demonstrated clear separation between samples classified as consistent and inconsistent with their labeled oil claims."[23] "Many avocado oil–labeled samples clustered near" a vegetable-oil comparator sample "containing canola, corn, soybean, and/or sunflower oil, suggesting that the fatty acid profiles of those products are more consistent with polyunsaturated vegetable oil compositions than with authentic avocado oil."[24]

45. In short, the oil in the Products is not avocado oil, or at a minimum, not fully avocado oil. It bears the compositional signature of the cheap refined vegetable oils that avocado oil is supposed to replace.

46. The Study reveals a widespread issue in Defendant's manufacturing processes. Because the avocado oil substitution and/or dilution with cheap oils occurred at Defendant's manufacturing facilities, the absence of avocado oil and inclusion of cheap oils affects all batches and lots of Defendant's Products, including Plaintiffs' purchases.

## V. THE FRYING PROCESS DOES NOT EXPLAIN THE COMPOSITIONAL INCONSISTENCY

47. The UC Davis researchers anticipated and tested the obvious defense—that the compositional deviations they observed might be an artifact of cooking rather than evidence of what oil went into the Products—and refuted it experimentally.[25]

48. The researchers prepared model products in the laboratory using retail avocado oils that they employed as reference oils, and whose pre-frying fatty acid and sterol profiles fell within every applicable Codex range.

49. The results were unambiguous. "For avocado oil subjected to frying [ ], absolute changes in major fatty acids were less than 0.6%." Cis-vaccenic acid—the key discriminatory marker for avocado oil authenticity—"decreased by only 0.1% following frying in both potato and

[23] *Id.* at 4.

[24] *Id.* at 6.

[25] *See id.* at 7.

tortilla chips." In other words, "[t]hese model product experiments indicate that typical frying and emulsification conditions do not substantially alter oil authenticity markers."

50. The magnitude of the deviations found in the Products cannot be explained by frying, by processing, or by natural variation. It is explained by the fact that the Products are not made with avocado oil.

## VI. DEFENDANT KNEW OR SHOULD HAVE KNOWN THE AVOCADO OIL REPRESENTATION WAS FALSE

51. Defendant knows, or reasonably should know, that its labeling of the Products is misleading to consumers.

52. Adulteration of avocado oil has been publicly and repeatedly documented since at least 2020, when UC Davis researchers published the first report on the quality and purity of avocado oil sold in the United States and found that the majority of the samples tested were adulterated or of substandard quality.[26] A follow-up study published in 2023 found that approximately 70% of private-label avocado oils tested were "rancid or mixed with other oils."[27]

53. Defendant is a sophisticated food manufacturer that sources, formulates, and markets the Products, and that since January 2025 has been a wholly owned subsidiary of one of the largest food and beverage companies in the world. Defendant is aware of industry studies and trends, and is aware of the well-documented problem of adulteration in the avocado oil supply chain. Thus, Defendant knew or should have known that the Products do not contain avocado oil or are diluted with other cheaper oils.

## FED. R. CIV. P. 9(b) ALLEGATIONS

54. Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To

[26] Hilary S. Green & Selina C. Wang, *First report on quality and purity evaluations of avocado oil sold in the US*, https://www.sciencedirect.com/science/article/pii/S0956713520302449.

[27] Tiffany Dobbyn, *Nearly 70% of Private Label Avocado Oil Rancid or Mixed With Other Oils,* https://www.ucdavis.edu/food/news/70%25-private-label-avocado-oil-rancid-or-mixed-other-oils; Hilary S. Green & Selina C. Wang, *Purity and quality of private labelled avocado oil*, https://www.sciencedirect.com/science/article/pii/S0956713523002372.

the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

55. **WHO:** Defendant Garza Food Ventures LLC d/b/a Siete Family Foods.

56. **WHAT:** Defendant's conduct was deceptive because it deceived consumers into believing that the Products were made with avocado oil and that avocado oil was the only oil used to make the Products. Defendant failed to accurately label the Products with an accurate statement of what kind of oils were used to make them. Defendant knew or should have known, as the manufacturer and marketer of the Products with superior knowledge of the composition of its Products, that this information is material to reasonable consumers. Yet, Defendant misrepresented on the labeling of its Products that they contained avocado oil and failed to ensure the Products in fact were made with avocado oil like Defendant warranted. Defendant knew or should have known that the Products were not made with avocado oil as labeled because Defendant is the manufacturer of the Products and has quality control testing protocols set in place that should have alerted Defendant of the nature of the Products' actual oil content.

57. **WHEN:** Defendant engaged in this deceptive conduct continuously throughout the applicable statutory periods, including at the point of sale. Defendant's false and misleading Avocado Oil Representation was printed on the Products front label and online sales pages for consumers to view and rely on.

58. **WHERE:** Defendant's misrepresentation was made on the Products' front packaging and on the back of the package's ingredients list and were thus viewed by every purchaser, including Plaintiffs, at the point of sale in every transaction. The Products are sold online and in brick-and-mortar stores nationwide. Because all the Products at issue claim to be made with avocado oil, Defendant's dilution or substation of avocado oil with other oils occurred in Defendant's manufacturing facilities and thus affected all production of the Products, including Plaintiffs' purchases.

59. **HOW:** Defendant misrepresented on the Products' front packaging that they were made with avocado oil when independent testing revealed that they contain oils different than the avocado oil represented. And as discussed in detail throughout the Complaint, Plaintiffs and Class

Members read and relied on Defendant's misrepresentation regarding the avocado oil content before purchasing the Products and in choosing to purchase the Products.

60. **WHY:** Defendant misrepresented the avocado oil content it included in its Products. This representation was material in that it induced consumers like Plaintiffs to purchase the Product for its purported nutritional benefit while charging consumers a price premium. Accordingly, due to the representation, Plaintiffs and Class Members paid a price premium for the Products that they would not have, or would have paid substantially less for, had the Products not been diluted or substituted with oils other than avocado oil contrary to Defendant's express representation. As such, Defendant unlawfully profited by selling the Products to thousands of consumers throughout the nation, including Plaintiffs and the Class Members.

61. **INJURY:** Plaintiffs and Class Members were injured by Defendant's conduct in that they would not have purchased Defendant's Products, or would not have purchased them on the same terms, had they known that Defendant's Products did not contain avocado oil like Defendant expressly represented on the packaging.

## CLASS ALLEGATIONS

62. Plaintiffs seek to represent a nationwide class defined as:

> All persons in the United States who purchased the Product for personal or household use during the statute of limitations period (the "**Nationwide Class**").

63. Plaintiffs also seek to represent a California Subclass defined as:

> All Class members who purchased the Product for personal or household use in California during the statute of limitations period (the "**California Subclass**").

64. Collectively, the Nationwide Class and California Subclass shall be referred to as the "Classes."

65. Excluded from the Classes are (1) Defendant and any entities in which Defendant has a controlling interest; (2) Defendant's agents and employees; (3) any Judge and/or Magistrate Judge to whom this action is assigned and any member of such Judges' staff and immediate families; (4) Plaintiffs' Counsel; and (5) Defendant's Counsel.

66. Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Classes may be modified, expanded, or narrowed by amendment to the Complaint or narrowed at class certification.

67. ***Numerosity.*** The members of the Classes are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate there are hundreds of thousands of members in the Classes. Plaintiffs do not know the exact number of members in the proposed Classes but reasonably believe, based on the scale of Defendant's business, that the Classes are so numerous that individual joinder would be impracticable.

68. ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the Products contained the avocado oil;

(b) Whether Defendant knew or should have known the Products contained oils other than avocado oil;

(c) Whether Defendant is liable to Plaintiffs and the Classes for unjust enrichment;

(d) Whether the substitution and/or inclusion of other oils renders the Products misbranded;

(e) Whether Defendant violated the state consumer protection statutes alleged herein;

(f) Whether Plaintiffs and the Classes have sustained monetary loss and the proper measure of that loss;

(g) Whether a reasonable consumer would consider the avocado oil content in the Products to be material;

(h) Whether the packaging for the Products is deceptive.

69. ***Typicality.*** Plaintiffs' claims are typical of the claims of the Classes in that Plaintiffs, like all members of the Classes, purchased the Products, which did not include avocado oil, in reliance on the representation and warranty described above. Plaintiffs and members of the Classes suffered a loss as a result of the purchases and so were injured by Defendant's misconduct

in the very same way. In other words, the factual bases of Defendant's misconduct are common to all members of the Classes and represent a common thread of misconduct resulting in injury to all members of the Classes.

70. ***Adequacy of Representation.*** Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs have retained counsel who are highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action on behalf of the Classes. Plaintiffs have no interests that are antagonistic to those of the Classes.

71. ***Superiority***. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by members of the Classes are relatively small compared to the burden and expense of individual litigation of their claims against Defendant. It would, thus, be virtually impossible for members of the Classes, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, even if members of the Classes could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
**Violation of California's Consumers Legal Remedies Act ("CLRA")**
**California Civil Code § 1750, *et seq.***
**(By Plaintiffs on Behalf of the California Subclass)**

72. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

73. Plaintiffs bring this claim individually and on behalf of the Members of the Classes against Defendant.

74. Plaintiffs and other Members of the Classes are "consumers" within the meaning of Cal. Civ. Code § 1761(d). By purchasing Defendant's Products, Plaintiffs and the Members of the Classes engaged in "transactions" within the meaning of Cal. Civ. Code §§ 1761(e) and 1770.

75. Defendant is a "person" within the meaning of Cal. Civ. Code § 1761(c). Defendant's Products are a "good" within the meaning of Cal. Civ. Code § 1761(a).

76. Defendant's unfair and deceptive business practices, as alleged above and herein, were intended to and did result in the sale of the Products.

77. Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

78. Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

79. Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

80. Defendant violated these provisions by misrepresenting that the Products are made with avocado oil when they are not and instead are made with cheap, refined seed oils.

81. Defendant's wrongful business practices constituted, and still constitute, a continuing course of conduct in violation of the CLRA.

82. Plaintiffs and the Members of the Classes suffered economic injury as a direct and proximate result of Defendant's violation because: (a) they would not have purchased the Products on the same terms if they had known that the Products were not made with avocado oil like Defendant affirmatively stated; (b) they paid a price premium compared to products without the misrepresentation alleged herein; and (c) the Product did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

83. Plaintiffs and Members of the Classes seek to enjoin the unlawful acts and practices described herein pursuant to Cal. Civ. Code § 1780.

**COUNT II**
**Violations Of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

84. Plaintiffs incorporate by reference each of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

85. Plaintiffs bring this claim individually and on behalf of the Members of the Classes against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

86. The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act." Cal. Bus. & Prof. Code § 17200. A business act or practice is "unlawful" if it violates any established state or federal law. A practice is unfair if it (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

87. Defendant's acts, as described above, constitute unlawful, unfair, and fraudulent business practices pursuant to California Business & Professions Code §§ 17200, *et seq*.

88. Finally, Defendant engaged in unlawful business practices by violating the CLRA, Cal. Civ. Code §§ 1770(a)(5), (a)(7), and (a)(9) and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*.

89. In addition, as described more fully above, Defendant's misleading marketing, advertising, packaging, and labeling of its Products are likely to deceive reasonable consumers. In addition, Defendant has committed unlawful business practices by, *inter alia*, making the presentation and omission of material facts, as set forth more fully above, thereby violating the common law.

90. Defendant has also violated the UCL's proscription against engaging in **<u>Unfair Business Practices</u>**. Defendant's acts, misrepresentations, practices and non-disclosures as alleged

herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§ 17200, *et seq*. in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. The gravity of the conduct outweighs any alleged benefits attributable to such conduct. Defendant's deceptive practices led consumers to purchase the Products over other comparable avocado oil chip products that properly represent their oil content. Such injury is not outweighed by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or competition results from Defendant's conduct. Since consumers reasonably rely on the Product's labels, consumers could not have reasonably avoided such injury.

91. Plaintiffs and the Members of the Classes suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair packaging about the defective nature of the Products.

92. Finally, Defendant has further violated the UCL's proscription against engaging in **<u>Fraudulent Business Practices</u>**. Defendant's claim and misleading statement concerning the Products' avocado oil content, as more fully set forth above, was false, misleading and deceived the consuming public.

93. Plaintiffs lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to Plaintiffs and Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

94. Pursuant to California Business and Professional Code § 17203, Plaintiffs and the Members of the Classes seek restitution, injunctive relief, attorneys' fees, and all other relief that the Court deems proper.

**<u>COUNT III</u>**
**Violations Of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On Behalf of Plaintiffs and the California Subclass)**

95. Plaintiffs hereby incorporate by reference and re-allege herein the allegations contained in all preceding paragraphs of this Complaint.

96. Plaintiffs bring this claim individually and on behalf of the Members of the Classes against Defendant in the alternative to the extent allowed by Fed. R. Civ. P. 8(d)(2).

97. The FAL makes it "unlawful for any person … to make or disseminate or cause to be made or disseminated before the public in this state, … [in] any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or those services, professional or otherwise, or … performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

98. Defendant committed acts of false and misleading advertising, as defined by the FAL, by using statements to promote the sale of its Products by representing on the Products' packaging that the Products were made with avocado oil when the Products contain no avocado oil and instead are made with cheap, refined seed oils.

99. Defendant knew or should have known that its advertising claims are misleading and/or false.

100. Defendant knew or should have known, through the exercise of reasonable care, that its representation was false and misleading and likely to deceive consumers and cause them to purchase Defendant's Products.

101. Defendant's wrongful conduct was ongoing and part of a general practice that is possibly still being perpetuated and repeated throughout the State of California and nationwide. Plaintiffs and the Members of the Classes were injured in fact and lost money and property as a result.

102. The misrepresentation and non-disclosures by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code §§ 17500, *et seq*.

103. As a result of Defendant's wrongful conduct, Plaintiffs and the Members of the Classes lost money in an amount to be proven at trial. They are therefore entitled to restitution as appropriate for this cause of action.

104. Plaintiffs and the Members of the Classes seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; injunctive relief, reasonable attorneys' fees, and all other relief that the Court deems proper.

105. Plaintiffs lack an adequate remedy at law to address the unfair conduct at issue here. Legal remedies available to the Members of the Classes are inadequate because they are not equally prompt and certain and in other ways efficient as equitable relief. Damages are not equally certain as restitution because the standard that governs restitution is different than the standard that governs damages. Hence, the Court may award restitution even if it determines that Plaintiffs fail to sufficiently adduce evidence to support an award of damages.

106. Equitable relief is also appropriate because Plaintiffs may lack an adequate remedy at law if, for instance, damages resulting from their purchases of the Product is determined to be an amount less than the premium price of the Products. Without compensation for the full premium price of the Products, Plaintiffs and the Members of the Classes would be left without the parity in purchasing power to which they are entitled.

## COUNT IV
## Breach Of Express Warranty
## (On Behalf of Plaintiffs and the Nationwide Class)

107. Plaintiffs hereby re-allege and incorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

108. Plaintiffs bring this claim individually and on behalf of the Nationwide Class against Defendant.

109. Plaintiffs bring this claim under the laws of the State of California.

110. In connection with the sale of the Products, Defendant issued written express warranties in that Defendant affirmatively warranted that the Products were made with avocado oil. Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the Products, expressly warranted that the Products were fit for its intended purpose by making promises and affirmations of fact on the Products' packaging.

111. The affirmation of fact and promise made by Defendant to Plaintiffs and the Nationwide Class regarding the Products became part of the basis of the bargain between Defendant, Plaintiffs, and the Members of the Nationwide Class, thereby creating an express warranty that the Product would conform to those affirmations of fact, representations, promises, and descriptions. However, the Product did not, in fact, contain the avocado oil promised on the packaging and instead contained undisclosed cheap, refined seed oils.

112. Plaintiffs and Members of the Nationwide Class suffered economic injury as a direct and proximate result of Defendant's breach of warranties because: (a) they would not have purchased the Product on the same terms if they had known that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the Products based on Defendant's express warranties; and (c) the Products did not have the characteristics, uses, or benefits as promised by Defendant on the packaging. As a result, Plaintiffs and Members of the Nationwide Class have been damaged either in the full amount of the purchase price of the Products or in the difference in value between the Products as warranted and the Products as sold.

**COUNT V**
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Nationwide Class)**

113. Plaintiffs hereby re-allege and reincorporate all allegations contained in the preceding paragraphs as if fully set forth herein.

114. Plaintiffs bring this claim individually and on behalf of the Nationwide Class.

115. Plaintiffs bring this claim in the alternative to the extent allowed under Fed. R. Civ. P. 8(d)(2).

116. Plaintiffs bring this claim under the laws of the State of California.

117. Plaintiffs and Members of the Nationwide Class conferred a benefit in the form of monies paid to Defendant by purchasing a mislabeled Product.

118. Defendant voluntarily accepted and retained this benefit.

119. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class Members' purchases of the Products. Retention of those monies under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendant in the packaging of the Products. These misrepresentations caused injuries to Plaintiffs and Nationwide Class Members because they would not have purchased the Products if the true facts had been known.

120. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for mislabeled Products, it would be unjust and inequitable for Defendant to retain it without paying the value thereof. Accordingly, Plaintiffs and members of the Nationwide Class seek restitution as ordered by the Court.

## PRAYER FOR RELIEF

WHERFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek Judgment against Defendant, as follows:

(a) For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure, naming Plaintiffs as the representatives for the Classes, and naming Plaintiffs' attorneys as Class Counsel;

(b) For an order declaring that Defendant's conduct violates the statutes and common law referenced herein;

(c) For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

(d) For injunctive relief as pleaded or as the Court may deem proper; and

(e) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues in this action so triable as of right.

Dated: August 14, 2026

**BURSOR & FISHER, P.A.**

By: /s/ *Neal J. Deckant*
Neal J. Deckant

Neal J. Deckant (State Bar No. 322946)
Ines Diaz Villafana (State Bar No. 354099)
Karen B. Valenzuela (State Bar No. 357231)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ndeckant@bursor.com
idiaz@bursor.com
kvalenzuela@bursor.com

*Attorneys for Plaintiffs*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Neal J. Deckant, declare as follows:

1. I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court. I am a partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Joanna Bayer who resides in Oakley, California and Plaintiff Joshua Mokelu who resides in Rancho Cucamonga, California. I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2. The Complaint filed in this action is filed in the proper place for trial under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff Bayer's claims occurred in this District. Specifically, Plaintiff Bayer purchased the Products in this District within the statute of limitations period.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 14th day of August, 2026.

*/s/ Neal J. Deckant*
Neal J. Deckant